**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELISSA KIVO,<br>on behalf of Plaintiff and a class,<br><br>    Plaintiff,<br><br>v.<br><br>CREDIT CONTROL SERVICES, INC.<br>doing business as CREDIT<br>COLLECTION SERVICES,<br><br>    Defendant | Civil No.: 2:21-cv-02985-BMC |

**DEFENDANT CREDIT CONTROL SERVICES, INC.,**
**doing business as, CREDIT COLLECTION SERVICES'S**
**ANSWER AND AFFIRMATIVE DEFENSES**

AND NOW comes Defendant Credit Control Services, Inc., d/b/a Credit Collection Services ("CCS"), by and through its undersigned counsel, Gordon Rees Scully Mansukhani, LLP, and hereby answers the Class Action Complaint brought by Plaintiff Melissa Kivo ("Plaintiff"). In support thereof, CCS avers as follows:

**ANSWER TO INTRODUCTION**

1.  Admitted in part and denied in part. CCS admits that Plaintiff attempts to bring an action to secure redress for unlawful collection practices against Defendant CCS pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 161692 et seq. ("FDCPA"). CCS denies that it violated the FDCPA.

1

## ANSWER TO JURISDICTION AND VENUE

2. Denied. CCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the allegations in this paragraph.

3. Admitted.

4. Admitted.

## ANSWER TO PARTIES

### Answer as to Plaintiff

5. Admitted in part and denied in part. CCS admits that Plaintiff is a natural person, but lacks knowledge and information sufficient to form a belief as to whether Plaintiff was a resident of Nassau County, New York, at all times relevant to this action and therefore denies same.

### Answer as to Defendant

6. Admitted in part and denied in part. CCS admits that it is a corporation organized under the laws of Delaware with its principal place of business is 725 Canton Street, Norwood, MA 02062. CCS further admits that CT Corporation System is its registered agent. CCS denies the remaining allegations in this paragraph.

7. Admitted in part and denied in part. CCS admits that, at times, it uses the mails and telephone to collect due, owing and valid debts for others. CCS admits that Plaintiff cites to and quotes a partial statement from CCS's website. CCS denies the remaining allegations in this paragraph.

8. Admitted in part and denied in part. CCS admits that, at times, it engages in the practices of collection debts owed to others. CCS objects to the

term "almost all" as vague and ambiguous, and as such, CCS denies that CCS "almost all" of CCS' resources are devoted to debt collection. Unless otherwise admitted, the allegations in this paragraph are denied.

9. Admitted in part and denied in part. CCS admits that, at times, it engages in the practices of collection debts owed to others from which it derives revenue. Unless otherwise admitted, the allegations in this paragraph are denied.

10. Denied. CCS denies the allegations in this paragraph.

11. Admitted on information and belief. CCS admits that, typically, medical debts are incurred for personal or family purposes.

## ANSWER TO FACTUAL ALLEGATIONS

12. Admitted in part and denied in part. CCS admits that based upon a review of its records, Plaintiff had a due and owing balance of $421.77. CCS lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph. As such, the remaining allegations are denied.

13. Admitted in part and denied in part. CCS admits that its records reflect that it issued a collection letter dated September 20, 2020, to Plaintiff in connection with Plaintiff's undisputed, valid and delinquent monetary obligation owed to Quest Diagnostics Incorporated ("Quest") that plaintiff incurred because of her failure to pay her debt obligation to Quest for $421.77. Unless otherwise admitted, CCS denies these allegations.

14. Admitted in part and denied in part. CCS admits that it contracted with a registered commercial mail vendor whose compliance, data security and privacy practices meet and/or exceed industry standards to act as CCS's remote print and mail room in order to print and mail to Plaintiff a letter regarding her debt. CCS objects to the use of the term "bears markings" and "characteristic" as vague and ambiguous. Further responding, CCS denies the remaining allegations set forth in this paragraph.

15. Admitted in part and denied in part. CCS admits that it used the services of a letter vendor for the ministerial tasks of printing, folding, and mailing the September 20, 2020 letter. CCS objects to the use of the term "furnish" and "other personal information" as vague and ambiguous. Unless otherwise admitted, CCS denies these allegations.

16. Admitted in part and denied in part. CCS admits that it used the services of a letter vendor for the ministerial tasks of importing electronic data from CCS into a letter template that was designed and approved by CCS, and printing and mailing the letter. Unless otherwise admitted, CCS denies these allegations.

17. Admitted in part and denied in part. CCS admits that Plaintiff quotes from a portion of the FDCPA in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA or that CCS communicated with a third party in connection with the collection of Plaintiff's debt, it is denied.

18. Denied. CCS denies that the incidental and ministerial transfer of electronic information to a "back office" vendor is a communication. See FTC

4

staff commentary, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50,097-02, 50,104 (Dec. 13 1988); *see also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at … companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters"). CCS denies that Section 1692c(b) of the FDCPA precludes communications "with respect to" or "regarding" a debt, just communications "in connection with the collection of any debt" and denies that the transfer of electronic data to a medium, i.e., a letter vendor, is a "communication in connection with the collection of a debt" prohibited by Section 1692c(b) of the FDCPA.

19. Denied. CCS denies that the incidental and ministerial transfer of electronic information to a "back office" vendor is a communication *in connection with the collection of a debt*. See FTC staff commentary, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50,097-02, 50,104 (Dec. 13 1988); *see also White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at … companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters"). CCS denies that Section 1692c(b) of the FDCPA precludes communications "with respect to" or "regarding" a debt, just communications "in connection with the collection of any debt" and denies that the transfer of electronic data to a medium, i.e., a letter vendor, is a "communication in connection with the collection of a debt"

prohibited by Section 1692c(b) of the FDCPA. Furthermore, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Gruden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *see also Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010). CCS denies that the animating purpose of any communication with a vendor was to collect; rather, it was to use that vendor as a remote print and mail room.

20. CCS lacks sufficient knowledge or information to form a belief as to the allegations of this paragraph and therefore denies same.

21. Admitted in part and denied in part. CCS admits that Plaintiff quotes a portion of the FDCPA. Unless otherwise admitted, CCS denies the allegations in this paragraph. To the extent that it can be construed to allege that CCS violated the FDCPA or that CCS communicated with a third party in connection with the collection of plaintiff's debt it is denied.

22. Denied. CCS denies the allegations in this paragraph, as they call for conclusions of law. CCS refers all questions of law to the Court.

23. Denied. CCS denies the allegations in this paragraph.

24. Admitted in part and denied in part. CCS admits that Plaintiff cites to a portion of the Sixth Circuit decision in *Brown*. Unless otherwise admitted, CCS denies the allegations in this paragraph, as they call for conclusions of law. CCS refers all questions of law to the Court. CCS denies that it violated the FDCPA or caused damages to Plaintiff.

25. Denied. CCS denies the allegations in this paragraph.

6

26. Denied. CCS denies the allegations in this paragraph.

## ANSWER TO COUNT I – FDCPA

27. No response is required to this paragraph as Plaintiff is merely incorporating his allegations from prior paragraphs by reference. To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 26 as though fully set forth herein at length.

28. Denied. CCS denies that it violated 15 U.S.C. §1692c(b) of the FDCPA.

29. Denied. CCS denies that it violated 15 U.S.C. §1692f of the FDCPA.

## ANSWER TO CLASS ALLEGATIONS

30. Admitted in part and denied in part. CCS admits that Plaintiff attempts to bring this action on behalf of a class. CCS denies that this case qualifies for class treatment under FRCP 23.

31. Admitted in part and denied in part. CCS admits that Plaintiff attempts to seek certification of a class defined as "(a) all individuals in New York (b) with respect to whom Defendant had a letter prepared and sent by a letter vendor (c) which letter was sent at any time during a period beginning one year prior to the filing of this action and ending 30 days after the filing of this action." CCS denies that Plaintiff has standing to serve as a class representative and asserts that, even if he does, the defined class is fatally flawed, fail-safe class warranting dismissal. CCS further denies that Plaintiff has asserted a viable individual claim let alone a viable class claim. In addition, CCS denies that class

treatment is appropriate and denies any violation of the FDCPA. Unless otherwise admitted, the allegations of this paragraph are denied.

32. Denied. CCS denies the allegations in this paragraph.

33. Denied. On information and belief, CCS denies the allegations in this paragraph. CCS further denies the existence of numerosity in Plaintiff's putative class and leaves Plaintiff to his burden of proof.

34. Denied. CCS denies that Plaintiff's claims are typical of the claims of the Class. CCS further denies that common questions of law or fact outweigh the individual issues presented, thereby precluding class treatment in this matter. Further, CCS denies that class treatment is superior to other available methods for the efficient adjudication of this controversy. CCS denies engaging in any conduct in connection with Plaintiff that could be deemed violative of the FDCPA and denies any liability to Plaintiff.

35. Denied. CCS denies that Plaintiff would fairly and adequately protect the interest of his putative class and denies that Plaintiff's counsel possesses the necessary experience to serve as class counsel, as demonstrated by the fail-safe class definition counsel proposes. CCS further denies that there are common questions of law and fact that predominate over questions affecting individual members of the putative class. In addition, CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS denies that Plaintiff's claims are typical of the claims of the Class. CCS refers all questions of law to the Court.

36. Denied. CCS denies the allegations regarding the risk of inconsistent or varying adjudication. CCS denies that individual actions are not economically feasible. CCS denies that the alleged members of the putative class are likely to be unaware of their rights. Further, CCS denies the allegations in subparagraph (c) of this paragraph as it calls for a conclusion of law. CCS refers all conclusions of law to the Court.

### ANSWER TO PRAYER FOR RELIEF

Defendant, Credit Control Services, Inc. d/b/a Credit Collection Services denies the allegations in Plaintiff's "WHEREFORE" clause. Specifically, CCS denies that Plaintiff's fail-safe class could be certified and denies that Plaintiff's prayer for relief is appropriate in the absence of any viable claims under the FDCPA. Further, CCS denies that Plaintiff is entitled to costs or attorneys' fees, court costs, and any other and further relief that the Court deems just or equitable.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

CCS neither violated the FDCPA in the course of its collection efforts to recover on a valid and delinquent debt obligation owed to Quest Diagnostics Incorporated, nor did it improperly communicate with a third party in connection with the collection of a debt. Therefore, Plaintiff's claims against CCS under the FDCPA should be dismissed or withdrawn.

### SECOND AFFIRMATIVE DEFENSE

At all times relevant hereto, CCS acted in good faith and with good cause

and has not violated any rights which may be secured to Plaintiff under any federal, state, city, or local laws, rules, regulations, codes, or guidelines.

### THIRD AFFIRMATIVE DEFENSE

CCS at all times complied with the Health Insurance Portability and Accountability Act and Health and Human Services HIPAA Privacy Regulations implemented thereunder. CCS did not invade Plaintiff's privacy, as any ministerial transfer of electronic data to its vendor complied with the privacy standards established by the federal government.

### FOURTH AFFIRMATIVE DEFENSE

The secure electronic transmission of data to CCS' agent, a letter vendor, does not violate the FDCPA as it is not a communication in connection with the collection of a debt. Therefore, CCS did not violating Section 1692c(b) of the FDCPA. *See* FTC staff commentary, Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 FR 50097-02, 50104, 1988 WL 269068 (F.R.) (Dec. 13 1988) ("A debt collector may contact an employee of a telephone or telegraph company in order to contact the consumer, without violating the prohibition on communication to third parties, if the only information given is that necessary to enable the collector to transmit the message to, or make the contact with, the consumer"); *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at … companies that perform ministerial duties for debt collectors, such as stuffing and printing the debt collector's letters"); *see also* CFPB Regulation F, 85 Fed. Reg. 76734-01, 2020 WL 7014904 (F.R.) (Nov.

10

30, 2020) ("the Bureau understands that debt collectors can reduce the number of calls needed to establish an [right party contact] by purchasing higher-quality contact information from data vendors"); 86 Fed. Reg. 5766-01 n.446, 2021 WL 155534 (Jan. 19, 2021) (recognizing, with approval, that "over 85 percent of debt collectors surveyed by the Bureau reported using letter vendors").

## FIFTH AFFIRMATIVE DEFENSE

The secure transmission of data from computer server to computer server does not violate the FDCPA, as there is no human review or intervention or disseminated to the public. Therefore, there is no qualitative basis for "invasion of privacy" claims.

## SIXTH AFFIRMATIVE DEFENSE

The plain text of the FDCPA contemplates the use of third-party vendors. Congress specifically approved of the use of vendors and the electronic transfer of information to vendors as conduct that did not violate the FDCPA. While a debt collector is prohibited from communication with third parties in connection with the collection of any debt, a debt collector is not prohibited from communicating with a third party "with respect to" or "regarding" a debt. Congress approved the transfer of data to vendors in the body of the FDCPA. *See* 15 U.S.C. §§ 1692b(5), 1692f(5) & 1692f(8), permitting the use of telegrams. To argue a distinction between the transfer of data to a telegram company versus the same transfer of data to a letter vendor is disingenuous. Therefore, the argument that a debt collector runs afoul of the FDCPA in connection with a communication "with respect to" or "regarding" a debt (i.e., the transfer of data

11

to a letter vendor), as opposed to a communication in connection with the collection of a debt to a third party (i.e., family members, employers, friends or neighbors) lacks any basis on law or fact.

### SEVENTH AFFIRMATIVE DEFENSE

The secure electronic computer server to computer server transmission of electronic information does not interfere with or impinge on consumer protections and therefore, is protected under the First Amendment.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint does not allege facts sufficient to rise to the level of conduct required to recover statutory damages under the FDCPA, thus all requests for statutory damages thereunder are improper.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to show any violation of the FDCPA, and, therefore, is not entitled to attorney's fees or costs.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover any damages, or any recovery awarded should be reduced by the amount of damages that reasonably could have been avoided, because Plaintiff failed to take reasonable steps to mitigate the damages with respect to the matters alleged in the Complaint.

### ELEVENTH AFFIRMATIVE DEFENSE

The conduct of CCS at all times complied with all applicable statutes, regulations and laws; accordingly, the complaint and each purported cause of action alleged therein against CCS is barred.

### TWELFTH AFFIRMATIVE DEFENSE

In the event that Plaintiff is able to adequately plead an individual claim under the FDCPA, her individual entitlement to statutory damages is capped at $1,000 per action, not per defendant or per violation. See *Dunn v. Advanced Credit Recovery Inc.*, 2012 U.S. Dist. LEXIS 27205 (S.D.N.Y. Mar. 1, 2012); *Healy v. Midpoint Resolution Group, LLC*, No. 09 Civ. 117S, 2010 U.S. Dist. LEXIS 21865, 2010 WL 890996, at *3 (W.D.N.Y. Mar. 10, 2010); *Dowling v. Kucker Kraus & Bruh, LLP*, 2005 U.S. Dist. LEXIS 11000 (S.D.N.Y. 2005); *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273, 277 (S.D.N.Y. 2002); *Wiener v. Bloomfield*, 901 F. Supp. 771, 778 (S.D.N.Y. 1995); *Teng v. Metropolitan Retail Recovery*, 851 F. Supp. 61, 69 (E.D.N.Y. 1994); *Donahue v. NFS, Inc.*, 781 F. Supp. 188, 191 (W.D.N.Y. 1991).

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are atypical of her putative class.

### FOURTEENTH AFFIRMATIVE DEFENSE

CCS denies that Plaintiff is entitled to or should recover statutory damages in any amount. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010); *Jerman v. Carlisle*, No. 1:06 CV 1397, 2011 U.S. Dist. LEXIS 40771 (N.D. Ohio Apr. 13, 2011).

### FIFTEENTH AFFIRMATIVE DEFENSE

CCS asserts that an award of statutory damages in the absence of actual damages would exceed the limits of Constitutional due process. See, e.g., *State*

*Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996).

### SIXTEENTH AFFIRMATIVE DEFENSE

CCS asserts that the conduct of which Plaintiff complains is expressly authorized by the FDCPA. The FDCPA's authorization of the use of telegrams encompasses the use of print-and-mail vendors.

### SEVENTEENTH AFFIRMATIVE DEFENSE

CCS specially denies that its print-and-mail vendor is a "third party" within the scope of 15 U.S.C. § 1692c(b). The special and confidential relationship between CCS and its letter vendor makes the letter vendor CCS' agent and not a third party.

### EIGHTEENTH AFFIRMATIVE DEFENSE

CCS asserts that its conduct was authorized by Regulation F, 85 Fed. Reg. 76734, 86 Fed. Reg. 5766. Congress granted to the Consumer Financial Protection Bureau the power to promulgate rules implementing the FDCPA. See 15 U.S.C. § 1692(b)(6). Therefore, the Regulation is entitled to deference pursuant to *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  See also 12 U.S.C. § 5512(b)(4)(B).

### NINETEENTH AFFIRMATIVE DEFENSE

To the extent that 15 U.S.C. § 1692c(b) does not permit debt collectors to use print-and-mail vendors, that prior restraint on speech serves no legitimate or compelling governmental interest; therefore, the prohibition violates the First Amendment, U.S. Const. Amend. I.

### **TWENTIETH AFFIRMATIVE DEFENSE**

If the FDCPA permits a debt collector to use Western Union to transmit correspondence to a consumer but not to use a print-and-mail vendor to perform the same service, then 15 U.S.C. § 1692c(b) is void for vagueness in violation of the Fifth Amendment, U.S. Const. amend. V.

### **TWENTY-FIRST AFFIRMATIVE DEFENSE**

CCS asserts that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Gruden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *see also Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010). The animating purpose of communicating with a print-and-mail vendor is not to induce payment nor is it to embarrass or harass the consumer; rather, it is to secure the ministerial services of printing, folding, stuffing, sealing, metering and mailing.

### **TWENTY-SECOND AFFIRMATIVE DEFENSE**

CCS reserves the right to raise any other Affirmative Defenses not previously asserted in this Answer as they may arise through further investigation or discovery.

WHEREFORE, Defendant Credit Control Services, Inc., d/b/a Credit Collection Services, prays that this Answer be deemed good and sufficient and that claims against CCS be dismissed with prejudice; that judgment be granted in favor of Defendant and that the relief requested by Plaintiff be denied; that all costs be taxed to Plaintiff. Pursuant to 15 U.S.C. § 1692k(a)(3), CCS seeks its

reasonable fees and costs incurred in defending against that claim. CCS respectfully requests that the Court award the requested relief as well as such other and further relief as may the Court may deem just and equitable.

Dated: June 30, 2021

        Respectfully submitted,

        **GORDON REES SCULLY MANSUKHANI, LLP**

By: *Lori J. Quinn*
        Lori J. Quinn (Bar No. 4097358)
        One Battery Park Plaza, 28th Floor
        New York, New York 10004
        Tel: (212) 453-0758
        Fax: (212) 269-5505
        ljquinn@grsm.com
        Attorneys for Defendant, Credit Control Services, Inc. d/b/a Credit Collection Services

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2021, a true and accurate copy of Defendant's Answer with Affirmative Defenses was filed and served upon the following parties an participants via ECF:

Abraham Kleinman
Kleinman LLC
626 RXR Plaza
Uniondale, NY 11556-0626
Tel: (516) 522-2621
Fax: (888) 522-1692

Heather Kolbus
Admitted Pro Hac Vice
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Tel: (312) 739-4200
Fax: (312) 419-0379

*Attorneys for Plaintiff*

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _____
Lori J. Quinn (Bar No. 4097358)
One Battery Park Plaza, 28th Floor
New York, New York 10004
Tel: (212) 453-0758
Fax: (212) 269-5505
ljquinn@grsm.com
Attorneys for Defendant, Credit Control Services, Inc. d/b/a Credit Collection Services